1   CRAIG K. PERRY, Esq.
Nevada Bar No. 3786
2   CRAIG K. PERRY & ASSOCIATES
2300 W. Sahara Ave., Suite 800
3   Las Vegas, NV 89102
Telephone: (702) 228-4777
4   Fax: (702) 943-7520
Email: cperry@craigperry.com
5

6   CHRISTOPHER E. ROBERTS, Esq
BUTSCH ROBERTS & ASSOCIATES LLC
7   7777 Bonohomme Avenue, Suite 130
Clayton, MO 63105
8   Telephone: 314-863-5700
Email: croberts@butschroberts.com
9   *Subject to Pro Hac Vice*

10  *Attorneys for Plaintiff*
*JASON CARRODINE*

11

12   **IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

13

| | |
|---|---|
| 14   JASON CARRODINE, *individually, on behalf of himself, and all others similarly situated,* | Case No.<br>Dept. No.: |
| 15 | |
| Plaintiff, | |
| 16 | **COMPLAINT – CLASS ACTION** |
| vs. | |
| 17   RHBRREI, LLC, D/B/A | **JURY DEMAND** |
| LAUNCH HOMEBUYERS AND | |
| 18   ROCKET HOMEBUYERS | |
| 19 | |
| Defendants. | |

20                    **<u>CLASS ACTION COMPLAINT</u>**

21        COMES NOW Plaintiff Jason Carrodine ("Carrodine"), individually, and on behalf of

22   all others similarly situated, and for his Class Action Complaint against Defendant RHBRREI,

23   LLC d/b/a Launch Homebuyers and Rocket Homebuyers ("Defendant"), states:

24   ///

25   ///

1

**BACKGROUND**

1.      One of the most annoying and harassing types of telemarketing calls that consumers are currently receiving are unwanted calls about someone wanting to buy your property. This case is about putting a stop to at least some of these annoying and harassing calls.

2.      This case is about stopping incessant telemarketers like Defendant from placing incessant and unwanted calls and robocalls to the phones of Carrodine and likely thousands of other persons.

3.      Carrodine brings this class action lawsuit, individually, and on behalf of all others similarly situated, against Defendant for placing calls in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), and the TCPA's corresponding regulations.

4.      In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the TCPA into law, to protect consumers' consumers' privacy and the right to be left alone from unwanted telemarketing communications.

5.      A leading sponsor of the TCPA described unwanted telemarketing calls as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

6.      Defendant improperly placed prerecorded voice calls to the phones of Carrodine and the putative class members without first obtaining "prior express written consent," or any other form of consent, to place such calls.

7.      The receipt of a robocalls is a rampant problem in this country. For example, in the first eight months of 2024 alone, approximately 34.3 billion robocalls were placed in the United States. RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com/history/time (last visited Sept. 4, 2024). The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing communications. For example, while the Federal Communications Commission

levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

## PARTIES AND BACKGROUND ON THE PARTIES

8.     Carrodine is an individual who at all times material to this Complaint has resided in Las Vegas, Nevada and has at all time material to this Complaint been a citizen of the State of Nevada.

9.     Defendant is a Nebraska limited liability company who has been registered as a foreign limited liability company in the State of Nevada and has been in good standing to transact business in Nevada, and throughout the United States at all times material to this Complaint.

10.     Defendant has a registered agent located in Reno, Nevada.

11.     On information and belief, one of Defendant's two managers resides in Henderson, Nevada.

12.     Defendant has registered various trade names to use with the Nebraska Secretary of State.  Those trade names include Launch Homebuyers and Rocket Homebuyers.

13.     Defendant's trade name registration for Rocket Homebuyers states that the general nature of business is to "buy and sell real estate."

14.     Defendant's trade name registration for Launch Homebuyers states that the general nature of business is "real estate."

15.     One of Defendant's websites is www.launchhomebuyers.com.

16.     Defendant's website states that it "specializes in purchasing homes directly from homeowners for cash."

17.     Defendant's website also includes a video detailing its services.  The video states, "I want to talk to you about selling your house. Selling your house doesn't have to be hard. When you sell your house to Rocket Homebuyers it's going to be the easiest house you ever sell."

18.     Defendant's website states that one of Defendant's locations is in the State of Nevada.

19.     Defendant also a page on the www.launchhomebuyers.com website, with a URL link of www.launchhomebuyers.com/nevada/ ("the Nevada website").

20.      The Nevada website states, "We Buy Houses For Cash in Nevada," "Get a Quick Cash Offer for Your House in Nevada" and "Cash For Your Nevada House."

21.     The Nevada website also includes "Frequently Asked Questions about Selling Your House Quickly in Nevada" and answers to such questions.  These questions include: "Can you sell a house 'as is' in Nevada?," "How do I sell my house by owner in Nevada?," "What is the most profitable way to sell my house?," "How can I sell my house fast in Nevada?" and "How do I sell my house without as realtor in Nevada?"

22.     Defendant markets its products and services through placing telemarketing phone calls to persons.

23.     Defendant places calls to consumers using among other things, prerecorded voice technologies.

24.     Defendant also directs other forms of marketing, such as direct mail marketing, to persons in Nevada. For example, Defendant sent Carrodine a postcard marketing its services to Carrodine's Las Vegas address.  The postcard asked if Carrodine was "interesting in selling

[his] house" located at his Las Vegas address and also included a photograph of Carrodine's residence. The postcard Carrodine received also suggests the benefits of "selling to us." The postcard also included a call back number with a Las Vegas area code phone number 702-207-2272.

## JURISDICTION AND VENUE

25.     This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

26.     This Court has jurisdiction over Defendant because, among other things, Defendant: transacts business in Nevada, has a location in Nevada, purposefully directed its marketing efforts to Carrodine in Nevada, buys and sells homes in Nevada, regularly markets its services in the State of Nevada, and otherwise has sufficient contacts with the State of Nevada.

27.     The harm was sustained by Carrodine in this District and Carrodine has resided in this District at all times material to this Complaint.

28.     For those reasons, and as set forth generally in this Complaint, this Court has personal jurisdiction over the parties to this action, and venue is proper pursuant to 28 U.S.C. §1391(b)(2).

## DEFENDANT'S CALLS

29.     At all times relevant to this Complaint, Carrodine was the owner of a cell phone bearing the phone number 702-XXX-9862.

30.     Carrodine placed his phone number on the national Do Not Call Registry ("DNC List") on October 23, 2014, for the purpose of being left alone by telemarketers.

31.     The account for Carrodine's phone is not held in the name of a business.

32.     Carrodine uses his phone primarily for personal and household purposes, including communicating with friends and family members.

33.     Carrodine did not provide Defendant "prior express written consent" as that term is defined in 47 C.F.R. § 64.1200(f)(9) or any other form of consent, to place prerecorded voice calls, or any types of calls, to his cell phone.

34.     Carrodine never provided his personal information on a website maintained by Defendant.

35.     On or about July 5, 2023, Carrodine received a prerecorded voicemail from Defendant on his phone. The prerecorded voicemail stated, "Hey! We just closed on two properties in your area, and we're looking to buy two more properties this week. If you're looking to sell could you kindly text me or give me a call back? Thank you."

36.     On or about November 24, 2023, Carrodine received a prerecorded voicemail from Defendant on his phone. The prerecorded voicemail stated, "Hey, this is Michael. I hope you had an amazing Fourth. I'm giving you a call because it looks like your property just came across my desk as a property that was looking for an offer. If you are still in the market to sell, I just had a couple questions for you to finalize that. Give me a call back at your convenience and we look forward to talking soon."

37.     On or about January 4, 2024, Carrodine received a prerecorded voicemail from Defendant on his phone. The prerecorded voicemail stated, "Hey, it's Michael. I'm giving you a call because it looks like you had submitted a request or we maybe had an offer previously. I hope you had a good Thanksgiving and are enjoying your Black Friday. Just as you are we are

shopping for houses. However, we have a new program that just came available and we might be able to pay you an additional 20 to $30,000 for your house. If you are still in the market and would like to re-discuss what we can do for you, give me a call back at your earliest convenience. Thanks, and have a good day."

38.     Carrodine and the putative class members did not provide Defendant "prior express written consent" as defined in 47 C.F.R. § 64.1200(f)(9), or any other form of consent, to Defendant to place such calls to their phones.

39.     On information and belief, Defendant knew that it should not have placed calls to Carrodine and the putative class members, yet incessantly placed calls to them.

40.     The calls Defendant placed to Carrodine and the putative class members were harassing, irritating, invasive and annoying.

41.     Defendant's calls invaded Carrodine's and the putative class members' right to privacy, namely the right to be left alone from unwanted telemarketing calls.

42.     Defendant's calls caused Carrodine and the putative class members to waste time and be disrupted from their daily activities, addressing and/or responding to the unwanted calls.

## DIRECT AND VICARIOUS LIABILITY

43.     On May 9, 2013, the FCC determined that this was not a basis for avoiding liability within a Declaratory Ruling that held that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands

of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 F.C.C. Rcd. 6574 at 6588 (May 9, 2013) (internal citations omitted).

44.	Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id*. at 6587 n. 107.

45.	The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.,* at 6593.

46.	If Defendant directly placed the calls at issue to Carrodine, Defendant is directly liable for those calls.

47.	However, Defendant may have hired, encouraged, permitted, and enjoyed the benefits of mass telemarketing by third parties who are unknown at this time.

48.	To the extent a third party placed the calls at issue, such party or parties had actual and/or apparent authority to act on behalf of Defendant.

49.	Likewise, Defendant may have also ratified a third party's violations of the TCPA by accepting leads and deriving profit from the improper calls.

50.	Defendant is not permitted under the law to outsource and contract its way out of liability by directing and benefiting from its agents' TCPA violations.

51.	For the counts identified below, if Defendant directly placed the calls at issue, it is directly liable. In the alternative, to the extent any of the calls were made by a third-party

agent(s) acting on Defendant's behalf, Defendant can be held jointly and severally liable as Defendant is vicariously liable for those unlawful calls.

## CLASS ALLEGATIONS

52.     Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Carrodine brings this Complaint as a class action on behalf of himself and all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation.

53.     Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and 23(b)(3), Carrodine seeks to represent the following class:

> For the four-year period prior to the filing of this action through the date a class is certified, all persons in the United States to whom Defendant placed a prerecorded or artificial voice call to the recipient's phone.

54.     Carrodine reserves the right to add administrative subclasses, or to amend the definition of the proposed class, during the lawsuit proceedings.

55.     The members of the proposed class are so numerous that joinder of all members is impracticable. Carrodine reasonably believes that hundreds or thousands of people have been harmed by Defendant's actions. The names and phone numbers of the members of the proposed class are readily identifiable through records available to Defendant or those acting on its behalf.

56.     Members of the proposed class have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

57.     Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

   a.     Whether the voice technology used by Defendant constitutes a "pre-recorded voice" as defined by 47 U.S.C. § 227(b) of the TCPA;
   b.     Whether Defendant' conduct violates 47 U.S.C. § 227(b) of the TCPA;

c.    Whether Defendant's manner and system of obtaining consumer "consent" was legally deficient;
d.    Whether Defendant's conduct violates the rules and regulations implementing the TCPA; and,
e.    Whether Carrodine and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendant's conduct.

58.    Carrodine's claims are typical of the claims of the proposed class members because his claims arise from the same practice that gives rise to the claims of the members of the proposed class and is based on the same legal theories.

59.    Carrodine and his counsel will fairly and adequately protect the interests of the members of the proposed class. Carrodine's interests do not conflict with the interests of the proposed class he seeks to represent. Carrodine has retained lawyers who are competent and experienced in consumer litigation, the TCPA and class-actions.

60.    Carrodine's counsel will vigorously litigate this case as a class action, and Carrodine and his counsel are aware of their responsibilities to the putative members of the class and will discharge those duties.

61.    A class action is superior to all alternative methods of adjudicating this controversy, including through individual lawsuits. Joinder of all proposed members of the proposed class in one action is impracticable if not impossible and prosecuting hundreds or thousands of individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For members of the proposed class, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

10

62.      In contrast, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

63.      Questions of law and fact, particularly the propriety of sending prerecorded voice calls, predominate over questions affecting only individual members.

**COUNT I**
**Violations of the TCPA, 47 U.S.C. § 227(b) *et seq.***
**(Prerecorded Voice Call Violations – Individually, and on Behalf of The Putative Class)**

64.      Carrodine incorporates the allegations in the previous paragraphs as if fully stated in this Count.

65.      The TCPA states, in relevant part, "It shall be unlawful . . . (A) to make any call . . . using [a] prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone . . . ." 47 U.S.C. § 227(b)(1).

66.      A prerecorded voice call cannot be placed to a recipient without first obtaining the recipient's "prior express consent." *See generally* 47 U.S.C. § 227(b)(1)(B).

67.      Carrodine and the putative class members did not provide "prior express written consent," on any form of consent, for Defendant to place prerecorded voice calls to their phones.

68.      By placing calls to the phones of Carrodine and the putative class members without first obtaining their prior express written consent, Defendant violated the express provisions of the TCPA, including, but not limited to, 47 U.S.C. § 227(b)(1).

69.      The TCPA provides damages of $500 and up to $1,500 per violation. 47 U.S.C. § 227(b)(3).

70.      Defendant violated Section 227(b) of the TCPA by placing the previously mentioned prerecorded voice calls to Defendant and the putative class members' phones.

11

71.     Defendant knew or should have known it did not have the appropriate form of consent to contact Carrodine and the putative class members yet continued to call them.

72.     Carrodine and the putative class members are each entitled to $500 per violation of Section 227(b) of the TCPA, and up to $1,500.00 for every violation determined to be willful.

WHEREFORE Plaintiff Jason Carrodine, individually, and on behalf of all others similarly situated, requests the Court enter judgment in his favor and against Defendant RHBRREI, LLC d/b/a Launch Homebuyers and Rocket Homebuyers, and grant the following relief:

A. Enter an order against Defendant, pursuant to Federal Rule of Civil Procedure 23, certifying this action as a class action and appointing Carrodine as the class representative;

B. Enter an order appointing Craig K. Perry & Associates and Butsch Roberts & Associates LLC as class counsel;

C. Enter judgment in favor of Carrodine and the putative class for all damages available under the TCPA, including statutory damages of $500 per violation, and up to $1,500 per violation if Defendant willfully violated Section 227(b) of the TCPA and/or the applicable TCPA regulations;

D. Enter a judgment in favor of Carrodine and the putative class members that enjoins Defendant from violating the TCPA's regulations prohibiting Defendant from placing prerecorded voice calls without first obtaining the proper form of consent;

E. Award Carrodine and the class all expenses of this action, and requiring Defendant to pay the costs and expenses of class notice and administration;

F. Award all applicable pre- and post-judgment interest and court costs; and,

a. Award Carrodine and the class such further and other relief the Court deems just and appropriate.

///
///
///
///
///
///
///

12

**DEMAND FOR JURY TRIAL**

Pursuant to the Seventh Amendment to the Constitution of the United States of America, and in accordance with Fed R. Civ. P. 38, and LR 38-1, Plaintiffs demands a trial by jury.

Dated this 25th day of September, 2024.

CRAIG K. PERRY & ASSOCIATES

/s/ Craig K. Perry_____
Craig K. Perry, Esq.
Nevada Bar No. 3786
2300 W. Sahara Ave., Suite 800
Las Vegas, Nevada 89102
Telephone: (702) 228-4777
cperry@craigperry.com

BUTSCH ROBERTS & ASSOCIATES LLC

*/s/ Christopher E. Roberts*
Christopher E. Roberts (pro hac forthcoming)
BUTSCH ROBERTS & ASSOCIATES LLC
7777 Bonhomme Avenue, Suite 1300
Clayton, MO 63105
Telephone: (314) 863-5700
croberts@butschroberts.com
*Subject to Pro Hac Vice*

*Attorneys for Plaintiff*